No. 23-2788

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| NORTHWESTERN ILLINOIS AREA AGENCY ON AGING, | ) ) ) | Appeal from the United States District Court for the Northern District of Illinois, Western |
| Plaintiff-Appellant, | ) ) | Division |
| v. | ) ) | No. 3:22-cv-50070 |
| PAULA BASTA, | ) ) | The Honorable PHILIP G. REINHARD, |
| Defendant-Appellee. | ) | Senior Judge Presiding. |

## BRIEF OF DEFENDANT-APPELLEE

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

KAITLYN N. CHENEVERT
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2127
Kaitlyn.Chenevert@ilag.gov

Attorneys for Defendant-Appellee

# TABLE OF CONTENTS

*Page*

JURISDICTIONAL STATEMENT ................................................................... 1

ISSUES PRESENTED FOR REVIEW ........................................................... 3

STATEMENT OF THE CASE ....................................................................... 4

SUMMARY OF ARGUMENT ...................................................................... 19

ARGUMENT .............................................................................................. 21

I.      The *de novo* standard of review applies. ........................................... 21

II.     The Agency's claims based on the Department's denials of its Initial and APS Petitions were barred by the statute of limitations. ......................................... 21

III.    The district court properly dismissed counts I and V because section 3027(a)(5)(A) of the Act does not create a private right of action. ................... 26

IV.     The district court properly dismissed the Agency's claim in count II that Basta infringed on its ability to function as a public advocate. ......................... 35

V.      The district court properly determined that the Agency failed to allege a violation of section 3026(f)(2) because it did not claim that Basta withheld funds that would have otherwise been available to it under the Act .............. 37

VI.     The district court properly dismissed the Agency's due process claims  in counts III and IV. ................................................................................. 40

        A.      A.  The Agency identified no property interest found in federal law. .... 40

        B.      B.  The Agency identified no property interest found in state law. ......... 42

VII.    In the alternative, Basta is entitled to qualified immunity on the Agency's request for damages on its claims in counts I through V. ................................ 47

VIII.   The district court's order is not subject to reversal merely because it did not address each count individually. ......................................................... 49

CONCLUSION .......................................................................................... 50

# TABLE OF AUTHORITIES

*Page(s)*

## **Cases**

*520 S. Michigan Ave. Assocs., Ltd. v. Shannon*,
  549 F.3d 1119 (7th Cir. 2008) ................................................................. 40, 41

*A&R Janitorial v. Pepper Constr. Co.*,
  2018 IL 123220 ............................................................................................ 44

*Alexander v. Sandoval*,
  532 U.S. 257 (2001) ....................................................................... 31, 35, 36

*AnchorBank, FSB v. Hofer*,
  649 F.3d 610 (7th Cir. 2011) ...................................................................... 21

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
  572 F.3d 440 (7th Cir. 2009) ...................................................................... 21

*Ashafa v. City of Chi.*,
  146 F.3d 459 (7th Cir. 1998) ...................................................................... 21

*Bd. of Regents of State Colleges v. Roth*,
  408 U.S. 564 (1972) ............................................................................... 41, 45

*Beaman v. Freesmeyer*,
  776 F.3d 500 (7th Cir. 2015) ...................................................................... 48

*Behavior Inst. of Ind. v. Hobart City of Common Council*,
  406 F.3d 926 (7th Cir. 2005) ...................................................................... 26

*Blessing v. Freestone*,
  520 U.S. 329 (1997) ............................................................................... 32, 33

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) ................................................................. 22, 23

*Burford v. Sun Oil*,
  319 U.S. 315 (1943) ..................................................................................... 26

*Cain v. Larson*,
  879 F.2d 1424 (7th Cir. 1989) .................................................................... 42

ii

*California v. Sierra Club,*
451 U.S. 287 (2001) ........................................................................ 31

*Campbell v. Miller,*
787 F.2d 217 (1986) ........................................................................ 42

*Chasensky v. Walker,*
740 F.3d 1088 (7th Cir. 2014) ........................................................ 48

*Creation Supply, Inc. v. Selective Ins. Co. of Southeast,*
51 F.4th 759 (7th Cir. 2022) .......................................................... 43

*Cty. of McHenry v. Ins. Co. of the West,*
438 F.3d 813 (7th Cir. 2006) .......................................................... 46

*Daniel v. Cook County,*
833 F.3d 728 (7th Cir. 2016) .......................................................... 11

*Direct Auto Ins. Co. v. Bahena,*
2019 IL App (1st) 172918, ¶ 62 ...................................................... 44

*Easterling v. Thurmer,*
880 F.3d 319 (7th Cir. 2018) .......................................................... 24

*Gonzaga Univ. v. Doe,*
536 U.S. 273 (2002) ..................................................................*passim*

*Groenings v. City of St. Charles,*
215 Ill. App. 3d 295 (2d Dist. 1991) ............................................... 45

*Health & Hosp. Corp. of Marion Cty. v. Taleveski,*
599 U.S. 166 (2023) ..................................................................*passim*

*Heard v. Sheahan,*
253 F.3d 316 (7th Cir. 2001) ...................................................... 24, 26

*Hicks v. Midwest Transit, Inc.,*
479 F.3d 468 (7th Cir. 2007) .......................................................... 43

*Johnson v. City of Detroit,*
446 F.3d 614 (6th Cir. 2006) .......................................................... 36

*Johnson v. Hondo, Inc.,*
125 F.3d 408 (7th Cir. 1997) ............................................................ 3

*Khan v. Bland*,
630 F.3d 519 (7th Cir. 2010) ......................................................... 40

*Mahaffey v. Ramos*,
588 F.3d 1142 (7th Cir. 2009) ....................................................... 49

*Manley v. Law*,
889 F.3d 885 (7th Cir. 2018) ......................................................... 42

*McHugh v. Ill. Dep't of Transp.*,
55 F.4th 529 (7th Cir. 2022) ........................................................... 1

*Nowak v. St. Rita High Sch.*,
197 Ill.2d 381 (2001) ............................................................... 43, 44

*Nyhammer v. Basta*,
2022 IL 128354 ................................................................... *passim*

*Nyhammer v. Basta*,
2022 IL App (2d) 200460 ........................................................ 10, 15

*Patrick v. City of Chi.*,
81 F.4th 730 (7th Cir. 2023) ......................................................... 43

*Pearson v. Callahan*,
555 U.S. 223 (2009) .................................................................. 47

*Pennhurst State Sch. & Hosp. v. Halderman*,
451 U.S. 1 (1981) .................................................................... 27

*Pitts v. City of Kankakee*,
267 F.3d 592 (7th Cir. 2001) .................................................... 23, 26

*Planned Parenthood of Indiana, Inc. v. Comm'r of Indiana State Dep't Health*,
699 F.3d 962 (7th Cir. 2012) ....................................................... 32

*Roe v. Dettelbach*,
59 F.4th 255 (7th Cir. 2023) ......................................................... 21

*RWJ Mgmt. Co. v. BP Prod. N. Am., Inc.*,
672 F.3d 476 (7th Cir. 2012) .................................................... 36, 39

*Savory v. Lyons*,
469 F.3d 667 (7th Cir. 2006) ................................................ 23, 25, 26

iv

*Stant USA Corp. v. Factory Mut. Ins. Co.*,
    61 F.4th 524 (7th Cir. 2023) ......................................................... 21

*Steimel v. Wernert*,
    823 F.3d 902 (7th Cir. 2016) ......................................................... 21

*Talevski v. Health & Hosp. Corp. of Marion Cnty.*,
    6 F.4th 713 (7th Cir. 2021) ........................................................... 22

*Thomason v. Nachtrieb*,
    888 F.2d 1202 (7th Cir. 1989) ....................................................... 34

*U.S. v. Banas*,
    712 F.3d 1006 (7th Cir. 2013) ....................................................... 36

*Wilder v. Virginia Hospital Ass'n*,
    496 U.S. 498 (1990) ....................................................................... 29

*Wis. Dep't of Corr. v. Schacht*,
    524 U.S. 381 (1998) .................................................................... 1, 2

*Wright v. Roanoke Redevelopment and Housing Authority*,
    479 U.S. 418 (1984) ....................................................................... 29

**<u>Statutes</u>**

5 ILCS 100/1-1 *et seq* ............................................................................ 1

20 ILCS 105/4 (2022) ............................................................................. 5

20 U.S.C. § 1232g(b)(1) ........................................................................ 31

28 U.S.C. § 1291 ..................................................................................... 2

28 U.S.C. § 1331 ..................................................................................... 2

28 U.S.C. § 1367 ..................................................................................... 2

28 U.S.C. § 2107(a) ................................................................................ 2

42 U.S.C. § 1396r(c)(1)(A)(ii) .............................................................. 30

42 U.S.C. § 1396r(c)(2)(A) .................................................................... 30

42 U.S.C. § 1983 ..................................................................................... 1

42 U.S.C. § 3001 ................................................................................ 4, 33

42 U.S.C. § 3001, *et seq.* ....................................................................... 1

42 U.S.C. § 3025(a)(1)(A) ....................................................................... 5

42 U.S.C. § 3025(a)(1)(E) ................................................................................ 4

42 U.S.C. § 3025(a)(2)(A) ............................................................................... 4

42 U.S.C. § 3026 .................................................................................... 3, 14

42 U.S.C. § 3026(a) ....................................................................................... 5

42 U.S.C. § 3026(a)(1) ................................................................................... 5

42 U.S.C. § 3026(a)(4) ................................................................................. 37

42 U.S.C. § 3026(f)(2) .................................................................................. 37

42 U.S.C. § 3207(a) .................................................................... 4, 30, 31, 34

42 U.S.C. § 3027(a)(5) ........................................................................... *passim*

42 U.S.C. § 3027(a)(5)(A) ................................................... 5, 27, 30, 31, 41

42 U.S.C. § 3027(a)(11)(D) ........................................................................... 9

42 U.S.C. § 3027(d)(3) ................................................................................. 33

42 U.S.C. § 3012(a)(1) ................................................................................... 4

42 U.S.C. § 3025(a)(1) ................................................................................... 4

## Rules

7th Cir. R. 28(b) ........................................................................................... 1

Fed. R. App. P. 4(a)(1)(A) ............................................................................ 2

Fed. R. Civ. P. 12(b)(1) ...................................................................... 2, 13, 21

Fed. R. Civ. P. 12(b)(6) ...................................................................... 2, 13, 21

Fed. R. Civ. P. 12(c) .................................................................................... 23

Fed. R. Civ. P. 58 .......................................................................................... 2

## Regulations

45 C.F.R. § 1321.61 ............................................................................ 3, 35, 49

45 C.F.R. § 1321.63 ............................................................................... 16, 41

45 CFR § 1321.61(a) ..................................................................................... 4

45 CFR § 1321.61(b)(1) ................................................................................. 5

45 CFR § 1321.61(b)(3) ................................................................................. 5

89 Ill. Admin. Code § 230.10 ........................................................................ 5

89 Ill. Admin. Code § 230.150(a) ............................................................... 47

89 Ill. Admin. Code § 230.150(a)(1)..................................................................47

89 Ill. Admin. Code § 230.410..........................................................................6

89 Ill. Admin. Code § 230.420..........................................................................6

89 Ill. Admin. Code § 230.420(d)......................................................................9

89 Ill. Admin. Code § 230.450(a)(1)..................................................................6

89 Ill. Admin. Code § 230.450(b)..................................................................6, 47

89 Ill. Admin. Code § 230.400........................................................................14

89 Ill. Admin. Code § 230.450........................................................................27

# JURISDICTIONAL STATEMENT

The jurisdictional statement of Plaintiff-Appellant Northwestern Illinois Area Agency on Aging ("Agency") is not complete and correct. As required by 7th Cir. R. 28(b), Defendant-Appellee Paula Basta provides this statement.

The Agency filed a first amended complaint, the operative one in this case, under 42 U.S.C. § 1983 and the Illinois Administrative Procedure Act ("Procedure Act"), 5 ILCS 100/1-1 *et seq*. , against Basta in her personal and official capacities as Director of the Illinois Department on Aging ("Department"). Doc. 25.[1] The Agency alleged that Basta: (1) violated the Older Americans Act ("Act"), 42 U.S.C. § 3001, *et seq*., by denying its requests for administrative hearings, and allowed for administrative hearings only in limited circumstances, which was in conflict with the Act; (2) violated its due process rights under the Fourteenth Amendment to the United States Constitution by not providing it with administrative hearings; and (3) violated the Procedure Act in various ways. Doc. 25 at 12-27. The Agency sought declaratory relief, damages, and attorney fees and costs. *Id*. at 26-27. To the extent that the Eleventh Amendment to the United States Constitution affects subject matter jurisdiction, the district court lacked federal question jurisdiction over the Agency's official capacity claims for damages. *See McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 532-34 (7th Cir. 2022) (Eleventh Amendment immunity is jurisdictional but can be waived); *see also Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998)

---

[1] The record on appeal, which is the district court docket, is cited as "Doc. __ at __." The Agency's opening brief on appeal is cited as "AT Br. __."

1

(United States Supreme Court has "not decided" whether "Eleventh Amendment immunity is a matter of subject-matter jurisdiction").  The district court otherwise had subject matter jurisdiction over the Agency's action under 28 U.S.C. § 1331 because it raised federal questions and supplemental jurisdiction over the Agency's state claims under 28 U.S.C. § 1367.

Basta moved to dismiss the first amended complaint under Fed. Rs. Civ. P. 12(b)(1) and 12(b)(6).  Docs. 46, 46-1.  On August 16, 2023, the district court granted Basta's motion and dismissed the first amended complaint without prejudice and with leave to file an amended complaint.  Doc. 81 at 8.  On September 11, 2023, the Agency moved for entry of a final judgment, rather than replead, Doc. 83, which the district court granted, Doc. 84, thereby disposing of all claims against all parties.  On September 12, 2023, a separate judgment order was entered in favor of Basta on the district court docket pursuant to Fed. R. Civ. P. 58.  Doc. 85.  No motion to alter or amend the judgment was filed.

That same day, the Agency filed a notice of appeal, Doc. 86, which was timely under 28 U.S.C. § 2107(a) and Fed. R. App. P. 4(a)(1)(A) because it was filed within 30 days of the judgment's entry.  This court has jurisdiction over the Agency's appeal timely from a final judgment under 28 U.S.C. § 1291.

# ISSUES PRESENTED FOR REVIEW

1.      Whether the district court properly dismissed the Agency's claims based on the two petitions for an administrative hearing that it filed with the Department as barred by the statute of limitations because the Department dismissed those petitions on July 29, 2019, and September 24, 2019, but the Agency did not file its complaint in the district court until over two years later, on February 28, 2022.

2.      Whether the district court properly dismissed the Agency's claims that alleged violations of section 3027(a)(5) of the Act, 42 U.S.C. § 3027(a)(5), where that provision does not create a private right of action because its aim is to regulate the State, rather than focusing on an individual to be benefited, and allows for States to continue to receive federal funds so long as they are in substantial compliance with the Act.

3.      Whether the district court properly dismissed the Agency's claim based on 45 C.F.R. § 1321.61 because:  (1) the Agency failed to identify any federal statute conferring on it a right to enforce that federal regulation; and (2) section 3026 of the Act, 42 U.S.C. § 3026, does not provide that, as a public advocate, the Agency is entitled to an administrative hearing on its allegations that the "state plan" the Department submitted to the federal government does not comply with the Act.

4.      Whether the district court properly dismissed the Agency's procedural due process claims where it failed to identify a protected property interest.

5.      In the alternative, whether Basta is entitled to qualified immunity where the Agency failed to establish that she violated a clearly established right.

## STATEMENT OF THE CASE

## The Older Americans Act and the Illinois Department on Aging

Congress enacted the Act to improve the lives of aging individuals in various ways, including by providing physical and mental healthcare, "obtaining and maintaining suitable housing," and ensuring "[e]fficient community services." 42 U.S.C. § 3001. To further those goals, States may seek grants from the United States Department of Health and Human Services by submitting a state plan to the Assistant Secretary for the Administration on Aging. 42 U.S.C. §§ 3012(a)(1), 3025(a)(1), 3207(a). To develop its state plan, each State must designate a state agency, which is tasked with several functions. For one, the state agency must divide the State into "distinct planning and service areas," taking into consideration the "geographical distribution of older individuals in the State" and their needs. 42 U.S.C. § 3025(a)(1)(E). Then, the state agency must designate "a public or private nonprofit agency or organization as the area agency on aging for such area." 42 U.S.C. § 3025(a)(2)(A).

The area agency on aging ("area agency") "shall serve as the public advocate for the development or enhancement of comprehensive and coordinated community-based systems of services in each community throughout the planning and service area." 45 CFR § 1321.61(a). In acting as the public advocate, the area agency shall "[m]onitor, evaluate, and comment on all policies, programs, hearings, levies, and community actions which affect older individuals," and "[r]epresent the interests of

older persons to local level and executive branch officials, public and private agencies or organizations." 45 CFR § 1321.61(b)(1), (b)(3).

The area agency must develop a plan that provides "through a comprehensive and coordinate system, for supportive services, nutrition services, and where appropriate . . . multipurpose senior centers . . . within the planning and service area covered by the plan." 42 U.S.C. § 3026(a)(1). That plan must be submitted to the state agency for approval. *Id.* § 3026(a). The state agency, in turn, submits the state plan to the federal government for approval. 42 U.S.C. § 3025(a)(1)(A). The state plan is required to contain several components, including that the state agency will "afford an opportunity upon request, in accordance with the published procedures, to any [area agency] submitting a plan under this subchapter, to any provider of (or applicant to provide) services." 42 U.S.C. § 3027(a)(5)(A).

The Department is the "single State agency for receiving and disbursing federal funds made available under [the Act]." 20 ILCS 105/4 (2022). It is charged with "developing and administering the State plan," as well as "[h]aving primary responsibility for the coordination of all activities in the State relating to the purposes of the Act," "[s]erving as the effective and visible advocate of all older persons in the State," and "[a]ssisting [area agencies] in the development of comprehensive and coordinated service delivery systems throughout the State." 89 Ill. Admin. Code § 230.10.

Before August 10, 2021, section 230.410 of the Department's regulations required that the Department provide an area agency with an opportunity for a

hearing when the Department "proposes to (1) disapprove the area plan or any amendment to the area plan that has been submitted to the Department by the [area agency] or (2) withdraw from the agency designation as an [area agency]," or when "any eligible applicant for designation as a planning and service area under the provisions of [the Act]" has been denied, or "any nutrition project that an area agency proposes to defund." *Nyhammer v. Basta*, 2022 IL 128354, ¶ 56 (citing 89 Ill. Admin. Code § 230.410, amended at 5 Ill. Reg. 3722 (eff. Mar. 31, 1981), renumbered at 7 Ill. Reg. 5178 (eff. July 27, 1983)).

But effective August 10, 2021, that regulation was repealed and replaced with an amendment which provides that the Department will allow appeals by an area agency when the Department proposes to "(1) [d]isapprove the area plan or any amendment to the area plan that has been submitted to the Department by the [area agency]," or "(2) [r]eject the [area agency's] recommendation to designate a service provider." *Id.* § 230.420 (eff. August 10, 2021). And section 230.450 provides that the Department will provide an opportunity for a hearing to an area agency when the Department proposes to: "(A) [d]isapprove the area plan or any amendment to the area plan that has been submitted to the Department by the [area agency]; or (B) [r]eject the [area agency's] recommendation to designate a service provider." *Id.* § 230.450(a)(1) (eff. August 10, 2021). Further, the Department reserved "the right to conduct administrative hearings for other appeal requests concerning the health, safety and welfare of older individuals." *Id.* § 450(b) (eff. August 10, 2021).

**The Agency's Petitions to the Department and State Court Litigation**

     **The Initial Petition**

The Agency is designated as the area agency for Illinois planning services Area 1. Doc. 25 at 3. In June 2019, the Agency filed a petition for administrative hearing ("Initial Petition") with the Department. Doc. 25 at 8; Doc. 25-2. In that petition, the Agency stated that in July 2013, it had sent an e-mail to the Department's then-Director, John Holton, asserting that the Department's Adult Protective Services ("APS") manual was "invalid," and requesting that the Department recall it. Doc. 25-2 at 4. The Agency advised Holton that it was "considering litigation regarding the [m]anual." Doc. 25-2 at 4. Several months later, Holton sent the Agency a letter advising that the Department was terminating its "Fiscal Year 2014 Adult Protective Services Program Grant" with the Agency, effective January 31, 2014. Doc. 25-2 at 4, 16.

In the Initial Petition, the Agency further claimed that in April 2019, Grant Nyhammer, the Agency's executive director and general counsel, attended a meeting with the Department's Director. Doc. 25-2 at 1, 4. During that meeting, Nyhammer was purportedly informed by a Department employee that in 2014 she had been "given an order" to "withhold funding from [the Agency] to retaliate for [its] advocacy" regarding the APS manual. Doc. 25-2 at 4. That same month, Nyhammer sent an e-mail to Basta, who had become the Department's Director, asking the Department to "investigate funding being withheld from [the Agency]" in 2014. Doc. 25-2 at 5, 17. Two months later, the Director responded and advised Nyhammer that

she could "not speak to the past practices," but reiterated that the Department was "committed to strengthening" its relationships with area agencies. Doc. 25-2 at 18. The Agency asserted in its Initial Petition that, as of June 2019, the Department had refused its request to investigate and refused to disclose how much funding had been withheld from it. Doc. 25-2 at 5. The Initial Petition requested an administrative hearing and an order finding, among other things, that the Department violated the Procedure Act by withholding funds from it, and that the Department also violated Illinois law in a variety of other ways. Doc. 25-2 at 9-10.

The Department sent a letter to the Agency advising it that the petition did not present a "contested case" as defined by the Procedure Act, and as a result, it was "unable to issue a final decision or order." Doc. 25-3 at 1.

**The APS Petition**

In August 2019, the Agency filed a second petition ("APS Petition") with the Department, this time requesting a hearing because it claimed that the Department had improperly rejected its designation of APS providers. Doc. 25-4 at 1. In that petition, the Agency asserted that on June 17, 2019, it had designated APS providers for Area 1, the area for which it had been designated as the area agency. Doc. 25-4 at 1, 4. And on July 31, 2019, the Department advised the Agency that it was rejecting its recommended designations based on "various deficiencies in the underlying Request for Proposal process." Doc. 25-4 at 11.

The following month, the Department advised the Agency that it was unable to provide a hearing on the APS Petition because it "fails to present a contested case that would support the right to an adjudicator hearing." Doc. 25-5 at 1.

**State Plan Appeal**

In September 2021, the Agency filed a third request for an administrative hearing with the Department, alleging that the Department's state plan for 2022-2024 did not comply with the Act ("State Plan Appeal"). Doc. 25 at 7; Doc. 25-6 at 1. Specifically, the Agency noted that the Act requires that a state plan "contains assurances . . . that legal services furnished under the plan will be in addition to any legal services for older individuals being furnished with funds from sources other than this chapter of [the Act]." Doc. 25-6 at 1 (citing 42 U.S.C. § 3027(a)(11)(D)). The Agency asserted that the state plan did "not contain adequate assurances regarding the Restriction on Using Funding." Doc. 25-6 at 1-2. The Agency's request for a hearing was dismissed in December 2021, after the Department determined that its appeal did not comply with 89 Ill. Admin Code § 230.420(d), which allowed for appeals only in limited circumstances. Doc. 25-7 at 1.

**State Court Litigation**

After the Department denied the Agency's Initial and APS Petitions, Doc. 25 at 10, Nyhammer, as the Agency's executive director and general counsel, filed a mandamus complaint in the circuit court of Winnebago County, Illinois, No. 2019 MR 1106. *See Nyhammer*, 2022 IL 128354, ¶ 3. In that complaint, Nyhammer sought an order compelling the Department to: "(1) adopt administrative rules that comply

with the Procedure Act for 'contested case' hearings"; (2) provide the Agency hearings on its Initial and APS Petitions, and; (3) pay "damages and costs," and "litigation expenses and attorney fees." *Id*. at ¶ 13. The Department filed a motion to dismiss the complaint, which the circuit court granted. *Id*. at ¶ 15. The appellate court reversed the circuit court's order, concluding that the Department's "summary dismissals of [the Agency's] petitions and its conclusory statements that the petitions failed to present contested cases were insufficient for meaningful judicial review." *Nyhammer v. Basta*, 2022 IL App (2d) 200460, ¶ 33. And it held that the Department was "required to give [the Agency] adjudicatory hearings and determine the merits of its petitions." *Id*. at ¶ 42.

But the Illinois Supreme Court affirmed the circuit court's judgment. *Nyhammer,* 2022 IL 128354 at ¶ 75. The court began by noting that the Procedure Act defined "contested case" as an "adjudicatory proceeding . . . in which the individual legal rights, duties, or privileges of a party are *required by law to be determined by an agency only after an opportunity for a hearing*." *Id.* at ¶ 40 (emphasis in original) (quoting 5 ILCS 100/1-30). The court determined that there was nothing in any Illinois statute or Department regulation requiring it to provide the Agency with a hearing before deciding the petitions. *Id*. at ¶¶ 47-62. Further, the court concluded, the Agency had no constitutionally protected property interest that would entitle it to a hearing under the federal or Illinois constitutions. *Id*. at ¶¶ 64-67.

Nyhammer filed a petition for writ of *certiorari* with the United States

Supreme Court, https://bit.ly/4amWxTY, which the Court denied on May 22, 2023,

https://bit.ly/4cpwdtQ.[2]

**Federal Court Proceedings**

### The Agency's First Amended Complaint

In the Agency's first amended complaint, it alleged that Basta violated its

"legal rights, including due process rights," in a variety of ways.  Doc. 25 at 1-2.

Counts I through V were asserted against Basta in her personal capacity and counts

VI through X, which alleged state law violations, were asserted against Basta in her

official capacity.  *Id*. at 12-18.[3]

In count I, the Agency alleged that Basta's dismissal of its State Plan Appeal

violated its rights to a hearing under section 3027(a)(5) of the Act.  *Id*. at 12.

Specifically, the Agency claimed that the "only condition" it had to satisfy to receive a

hearing under the Act was to "submit[ ] an area plan to the Department," and argued

that there was "no limitation" in section 3027(a)(5) "regarding the topic for which

[the Agency] can request a hearing."  *Id*. at 12.  In count II, the Agency alleged that

---

[2]  This court may take judicial notice of the petition and Supreme Court order.  *See Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016) (courts "routinely take judicial notice of the actions of other courts or the contents of filings in other courts").

[3]  In its opening brief, the Agency does not challenge the district court's decision to relinquish jurisdiction over its state law claims asserted in counts VI through X.  *See* AT Br. 7-32.

the dismissals of each of its three petitions violated its right under the Act to function as a public advocate. *Id*. at 13.

In count III, the Agency alleged that Basta's "ongoing refusal" to provide it with a hearing on its Initial Petition violated its due process rights, contending that it had a property right to, among other things, "[f]unding to which it is entitled." *Id*. at 13-14. Similarly, in count IV, the Agency claimed that Basta violated its due process rights by denying its request for a hearing on its APS Petition. *Id*. at 14. The Agency asserted that it had a property right to: "[a] hearing when the Department proposes to reject [the Agency's] recommendation to designate an APS service provider" or to "designate [an APS] service providers," and also to "challenge the processes by which [Basta] denies [the Agency] a hearing." *Id*. at 14-15.

In count V, the Agency alleged that section 230.420 of the Department's amended regulation conflicted with the Act, which, the Agency asserted, requires the Department to provide it with a hearing if it submitted an area plan to the Department or if the Department proposed to withhold funding from it. *Id*. at 16-17. The Department's regulation, the Agency asserted, deprived it of its right to a hearing under the Act and to due process if the Department "proposes to withhold funding." *Id*. at 17.

As relief, the Agency sought an order stating that: (1) Basta "unlawfully" failed to provide it with hearings on its three petitions; (2) Basta violated its due process rights, statutory rights under the Act, and "other legal rights"; and (3) the amended regulation was invalid under the Procedure Act. *Id*. at 25-26. It also

sought an order requiring the Department to withdraw the amended regulation. *Id*. Finally, the Agency sought costs and attorney fees, and "damages in excess of $75,000." *Id*. at 26.

### Basta's Motion to Dismiss

Basta moved to dismiss the action under Fed. Rs. Civ. P. 12(b)(1) and 12(b)(6). Docs. 46, 46-1. Basta argued that the Act did not provide the Agency with a right enforceable under section 1983, so counts I and V must be dismissed. Doc. 46-1 at 6, 8-9. Specifically, Basta contended, section 3027(a)(5)(A) required that a State plan must be submitted to the federal government for review and approval. *Id*. at 6-7. Although that section required a state plan to "afford an opportunity for a hearing upon request, in accordance with published procedures, to any area agency on aging submitting a plan under this title," that section did not contain any "rights creating language" that would allow the Agency to bring a claim under section 1983. *Id*. at 7. Rather, the focus of that section was on the requirements imposed on States when creating their plans to obtain approval from the federal government. *Id.*

Moreover, Basta explained, even if section 3027 did contain rights-creating language, the Agency's claims would nonetheless fail because that section provides only that the Department must provide an opportunity for a hearing to an area agency submitting a plan to the Department. *Id*. And because the Agency's State Plan Appeal concerned a challenge to the Department's plan, and not a plan that the Agency had submitted to the Department, section 3027 did not apply. *Id*.

Basta also noted that, in count V, the Agency claimed that the Department's administrative hearing rule violated its due process rights to a hearing when the Department withheld funds from it, citing 42 U.S.C. § 3026. *Id.* at 6, n.2. But she explained that Department regulation 230.400, which describes the purpose and scope of the Department's appeal and hearing rules, specified that its administrative rules for Act programs did not apply to public hearings that were required under section 3026 of the Act. *Id.* at 6, n.2; *see also* 89 Ill. Admin. Code 230.400 ("This Subpart does not apply to public hearings required under 42 U.S.C. 3025 and 3026 or the termination of a federal grant award or other adverse federal action taken pursuant to the provisions of 45 CFR 75, Subpart D, or 2 CFR 200, Subpart D.").

For similar reasons, Basta argued that count II should be dismissed because section 3026 addressed an area agency's role as a public advocate but did not state that an area agency shall have "the right to a hearing as part of its duties as a public advocate." Doc. 46-1 at 9. Further, Basta added that count III failed because the Agency claimed in its Initial Petition that the Department withheld "other funding" from it, and then, in its first amended complaint, the Agency defined "other funding" as "something distinct from [funding under the Act]." *Id.* at 10 (citing Doc. 25-2 at 2). And the Act contained no section providing an area agency with a right to a hearing where funding other than that provided by the Act is withheld. *Id.*

Basta also argued that count IV should be dismissed because the Agency had no right to a hearing on its APS Petition. *Id.* Section 230.450 of the Department's regulations did not provide for a hearing in 2019, when the Agency filed its petition.

14

*Id*.  And although the Department amended its regulations in 2021 to provide area agencies with an opportunity for a hearing in such circumstances, that regulation did not apply retroactively.  *Id*. at 11 (citing *Nyhammer v. Basta*, 2022 IL App (2d) 200460, ¶ 24).  Moreover, as to all of the Agency's federal claims (counts I through V, which were asserted against Basta in her personal capacity), Basta argued that she was entitled to qualified immunity because the Agency failed to identify a clearly established right that she violated.  *Id*. at 11-12.

In addition, counts III and IV were barred by the applicable statute of limitations because those counts concerned denials of the Agency's requests for hearings in 2019, and the Agency did not file its complaint in the district court within two years of those denials.  *Id*. at 14-15.  Basta also argued that the court should abstain from exercising supplemental jurisdiction over the Agency's state-law claims in counts III and IV because those claims concerned the same issues being litigated in *Nyhammer*, which, at the time, was pending before the Illinois Supreme Court.  *Id*. at 15-16.

**The Agency's Response to Basta's Motion**

In response, the Agency agreed that the district court should abstain from exercising jurisdiction over counts III and IV, because, at that time, the petition for writ of *certiorari* from the Illinois Supreme Court's decision in *Nyhammer* was pending in the United States Supreme Court.  Doc. 66 at 1-2.

The Agency also argued that Basta's motion should be denied because it asked the district court to apply the wrong pleading standard, as the "Administrative

Pleading Standard" was "more relaxed than the Illinois judicial pleading standard[.]" *Id*. at 2. Further, the Agency claimed that Basta's motion ignored facts alleged in the complaint showing that Basta was "trying to keep the Department's misconduct concealed by preventing [the Agency] from having access to administrative hearings where the misconduct might be exposed." *Id*. at 6.

The Agency additionally argued that section 3027(a)(5) gave it an "unequivocal right" to a hearing because it had submitted an area plan. *Id*. at 8. Further, counts II through V of its complaint were "based on property interests created by Illinois law." *Id*. at 10. And, the Agency continued, Basta's motion should be denied because the Act gave it the right to act as a "public advocate." *Id*. at 11. In addition, the Agency maintained that count III was not subject to dismissal because it had adequately alleged that funding was withheld from it. *Id*. at 12. The Agency also argued that it adequately identified property interests to support its claim in count V, specifically 45 CFR § 1321.63, which, the Agency contended, required Basta to give it "appropriate funding." *Id*. at 16.

**Basta's Reply**

In support of her motion to dismiss, Basta reiterated that the Agency had failed to identify a federal statute conferring on it a privately enforceable right and had failed to identify a property interest in a hearing that gave rise to due process protections. Doc. 77 at 6-10. Further, Basta argued that rather than abstain from exercising jurisdiction over counts III and IV, those counts should now be dismissed because the Illinois Supreme Court had concluded that the Agency had no right to an

administrative hearing on its petitions. *Id*. at 8-9 (citing *Nyhammer*, 2022 IL 128354).

**The District Court's Dismissal Order**

The district court granted Basta's motion to dismiss, Doc. 81, ruling as follows. It first determined that the Agency's claims arising from its Initial and APS Petitions were barred by the applicable statute of limitations because the Agency did not file its complaint until February 28, 2022, more than two years after the denials of those petitions in 2019. *Id*. at 3-4.

Next, the district court dismissed the Agency's claims alleging violations of the Act. *Id*. at 5. The court rejected the Agency's assertion that section 3027(a)(5) of the Act gave it a right to a hearing on its petitions for two reasons. *Id*. First, the Agency argued that it was entitled to a hearing because it had "'submitted a plan under this subchapter.'" *Id*. at 5 (quoting 42 U.S.C. § 3027(a)(5)). But, the district court noted, the Agency omitted from its quotation the phrase "in accordance with published procedures*." Id*. And "[g]iven [the Agency's] failure to address the statute as written," the district court found its argument "unpersuasive" because "[t]he meaning of the statute cannot be ascertained by ignoring some of the words in the statute." *Id*. Second, section 3027 concerned the "contents of a plan that a state must submit to the federal government in order to be eligible for grants under [the Act]." *Id*. The court thus reasoned that the provision did not "clearly manifest an unambiguous intent to confer individual rights upon a class of beneficiaries" to which

the Agency belonged, and instead "primarily serves to direct the distribution of public funds." *Id*.

Furthermore, the district court concluded, section 3026(f)(2) did not create a private right of action. *Id*. at 6. Although the Agency claimed that this section required the Department to provide it with a hearing because the Agency alleged that funds had been withheld from it, the district court noted that the Agency failed to "identify which funds available under [the Act] it believes were withheld from it in violation of Section 3026(f)(2)." *Id*.

The district court also dismissed the Agency's due process claims. *Id*. at 7. The court noted that the Illinois Supreme Court held in *Nyhammer* that the Agency "had no property interest in either funding or service provider designations which were the subjects of the Initial Petition and the APS petition respectively." *Id*. The district court thus concluded that the Agency had not alleged a protected property interest. *Id*.

Having dismissed the Agency's federal claims in counts I through V, the district court relinquished jurisdiction over the state law claims. *Id*. at 7-8.

## SUMMARY OF ARGUMENT

This court should affirm the district court's judgment dismissing counts I through V of the Agency's first amended complaint. To begin, the Agency's claims based on the Department's denial of its Initial Petition (counts II and III) and APS Petition (counts II and IV) were barred by the applicable two-year statute of limitations. Those petitions were denied in 2019, but the Agency did not file its initial complaint in the district court until 2022. And the Agency failed to identify a continuing violation that would justify application of the continuing violation doctrine.

In addition, counts I and V were properly dismissed because section 3027(a)(5) of the Act does not create a privately enforceable right. That statute specifies what must be included in a state plan submitted to the federal government, including that the state plan must allow for an opportunity for a hearing, in accordance with published procedures, to any area agency that submitted its plan to the State. The statute's focus is on the regulated entity, the State, and it has an aggregate focus because it details the requirements of state plans generally, and thus is not concerned with whether any particular individual receives services or whether any particular area agency receives benefits. And the Act elsewhere provides that a State will continue to receive funds if it is in substantial compliance with the Act. These factors weigh against finding that section 3027(a)(5) creates a privately enforceable right.

Count II, in which the Agency claimed that Basta infringed on its ability to function as a public advocate, was also properly dismissed because the Agency failed to identify a federal statute authorizing it to privately enforce the federal regulation governing public advocates. Section 3026 of the Act, moreover, did not entitle it to a hearing based on its objection to the Department's state plan.

Furthermore, any claim based on section 3026(f)(2) of the Act was properly dismissed because that statute entitles an area agency to a hearing before the state agency may withhold funds from it that would otherwise be available under the Act. The Agency, however, alleged only that unspecified "funds" were withheld from it, not that the Department withheld funds that were made available to it under the Act.

The district court also properly dismissed the Agency's procedural due process claims in counts III and IV. The Agency failed to identify a protected property interest under either federal or state law that would entitle it to a hearing on its Initial Petition or APS Petition. And without having identified a protected property interest, the Agency's procedural due process claim necessarily failed.

Finally, the district court's dismissal order is not subject to reversal simply because it did not identify each count throughout its analysis. The district court discussed each of the Agency's federal claims in counts I through V and concluded that these claims either were barred by the statute of limitations or failed to state a claim.

**ARGUMENT**

## I. The *de novo* standard of review applies.

This court reviews *de novo* a district court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), *Stant USA Corp. v. Factory Mut. Ins. Co.*, 61 F.4th 524, 525 (7th Cir. 2023), and Fed. R. Civ. P. 12(b)(1), *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). This court evaluates the complaint "by 'viewing it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor.'" *Roe v. Dettelbach*, 59 F.4th 255, 262 (7th Cir. 2023) (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011)). On *de novo* review, the court may affirm on any basis in the record. *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016).

## II. The Agency's claims based on the Department's denials of its Initial and APS Petitions were barred by the statute of limitations.

The district court correctly determined the Agency's section 1983 claims based on the Initial Petition (counts II and III) and APS Petition (counts II and IV) were barred by the statute of limitations. *See* Doc. 81 at 3. Because section 1983 does not contain a statute of limitations, federal courts adopt the forum State's statute of limitations for personal injury claims. *Ashafa v. City of Chi.*, 146 F.3d 459, 461 (7th Cir. 1998). This court has "consistently held that the appropriate statute of limitations for § 1983 cases filed in Illinois is two years as set forth in 735 ILCS 5/13-202." *Id*.

The Agency filed its Initial Petition in June 2019, Doc. 25 at 8; Doc. 25-2, and the Department responded via letter on July 29, 2019, advising that because the Initial Petition did not present a "consented case," it was unable to issue a final decision or order.  Doc. 25-3 at 1.  The Agency filed the APS Petition in August 2019, Doc. 25-4 at 1, with the Department responding on September 24, 2019, again advising the Agency that its petition did not present a contested case.  Doc. 25-5 at 1. The Agency's initial complaint in the district court, however, was not filed until February 28, 2022, Doc. 1, more than two years after the Department denied the Initial and APS Petitions.  As a result, the Agency's claims based on those petitions were untimely and were properly dismissed by the district court.

On appeal, the Agency advances two arguments for reversal, but neither has merit.  First, the Agency argues that the court erred by dismissing these claims based on the statute of limitations when that issue was raised in a motion to dismiss rather than in an answer.  AT Br. 23.  But a statute-of-limitations defense is not required to be asserted as an affirmative defense in an answer, so long as "the pertinent facts are undisputed or can be taken favorably to the nonmoving party."  *Talevski v. Health & Hosp. Corp. of Marion Cnty*., 6 F.4th 713, 721 (7th Cir. 2021), *aff'd*, 599 U.S. 166 (2023); *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (courts may appropriately consider statute of limitations defense raised in motion to dismiss where "the relevant dates are set forth unambiguously in the complaint").  Such is the case here.  The Agency has not disputed the dates on which the Initial and APS Petitions were denied, nor the date it filed its initial complaint in the district court.

*See* AT Br. 7-32.  As a result, the district court properly considered the statute of limitations defense in the context of a Rule 12(b)(6) motion.  And even if "[t]echnically," this type of motion should be brought under Fed. R. Civ. P. 12(c) rather than Rule 12(b)(6), "the practical effect is the same."  *Brooks*, 578 F.3d at 579.  As a result, the fact that Basta raised the statute of limitations defense in her Rule 12(b)(6) motion does not warrant reversal.

Second, the Agency argues that the district court erred by improperly rejecting its argument that the denial of the Initial and APS Petitions amounted to a continuing violation.  AT Br. 24-28.  Again, the Agency is incorrect.  "Normally, the statute begins to run from the date of an injury," though that rule may not apply in some circumstances.  *Pitts v. City of Kankakee*, 267 F.3d 592, 595 (7th Cir. 2001).  One such situation is where there is a continuing violation.  *Id*.  The continuing violation doctrine concerns "the accrual of a claim."  *Id*.  To determine when a claim accrues, courts conduct a two-part inquiry.  *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006).  First, the court "must identify the injury."  *Id*.  Second, it "must determine the date on which the plaintiff could have sued for that injury."  *Id*.

Under the continuing violation doctrine, the statute of limitations will not run from the date of the injury when "it would be unreasonable to expect the plaintiff to perceive offensive conduct, . . . the earlier violation may be recognizable as actionable only in light of later events," or "each day or week brings a fresh wrong."  *Pitts*, 267 F.3d at 595 (internal quotations omitted); *see Savory*, 469 F.3d at 627 (continuing violation doctrine may apply when "the state actor has a policy or practice that

brings with it a fresh violation each day."). Thus, a violation is considered as continuing "when it would be unreasonable to require or even permit [plaintiff] to sue separately over every incident of the defendant's unlawful conduct." *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). In other words, a violation is continuing when the plaintiff is claiming that its injuries "are the consequence of a numerous and continuous series of events." *Id.*

Here, the alleged injury resulted from two discrete acts by the Department — its denials of the Agency's Initial and APS Petitions. *See* Doc. 25-3 at 1; Doc. 25-5 at 1. These singular acts do not give rise to a continuing violation. For example, in *Easterling v. Thurmer*, 880 F.3d 319, 323 (7th Cir. 2018), the plaintiff, an inmate, claimed that the department of corrections' denial of his requests to have visits with his minor daughter over several years beginning in 2004 constituted a continuing violation. Specifically, he argued that the "continuous denial of visits with his daughter" over 10 years was analogous to "cases of prolonged indifference by prison staff to inmates' medical needs." *Id.* This court rejected his argument, concluding that the "2004 denial was complete once the visitation was denied," and so the plaintiff "could have sought redress then." *Id.* Similarly here, the Department's denial of the Agency's Initial and APS Petitions were completed in 2019, and the Agency could have sought redress then. Indeed, that year Nyhammer filed a *mandamus* action in state court concerning the Department's denial of these petitions. *Nyhammer*, 2022 IL 128354, ¶ 3.

The Agency argues that the district court's reliance on *Easterling* was incorrect because that case was "about prisoner's rights under federal law." AT Br. 27. But the continuing violation doctrine, which decides a claim's accrual date, is governed by federal law. *Savory*, 469 F.3d at 672. Therefore, the district court properly relied on *Easterling*.

The Agency further argues that the "Illinois continuing tort doctrine" applies. AT Br. 24. But the Agency again incorrectly relies on state law when federal law governs. Although the statute of limitations for section 1983 actions is borrowed from state law, "the accrual of claims is governed by federal law." *Savory*, 469 F.3d at 672. As a result, Illinois's continuing tort doctrine has no applicability here. Nevertheless, the Agency argues that the "Tort Doctrine tolling the statute of limitations" applies because allegations in its first amended complaint should have led the district court to infer that Basta "orchestrated a plan and engaged in a conspiracy with her attorneys to deny [the Agency] administrative hearings in an effort to conceal Department misconduct." AT Br. 25. But the Agency did not assert a conspiracy claim against Basta, *see* Doc. 25 at 1-27, and it fails to explain how a state tolling doctrine has any applicability to a non-existent federal claim.

Next, the Agency argues that the district court erred because it noted that the Agency had argued "'that the failure to provide it with hearings on these matters is a continuing violation,'" but then "contradicted" itself by stating that the Agency had "'not identified any source of Illinois law on tolling.'" AT Br. 27 (quoting Doc. 81 at 3-4). But the Agency confuses two distinct doctrines. As explained, the continuing

violation doctrine concerns the accrual of claims, addresses when the statute of limitations begins to run, *Pitts*, 267 F.3d at 595, and is governed by federal law, *Savory*, 469 F.3d at 672. Tolling, on the other hand, "interrupts the statute of limitations after it has begun to run, but does not determine when it begins to run." *Heard*, 253 F.3d at 317. And whether a statute of limitations may be tolled is governed by state law. *Id*.

As a result, the district court properly relied on federal law when concluding that the Agency had not alleged a continuing violation. *See* Doc. 81 at 3. Separately, the district court noted that the Agency argued that "its state court litigation . . . tolled the limitations period," and, in support, had cited *Behavior Inst. of Ind. v. Hobart City of Common Council*, 406 F.3d 926 (7th Cir. 2005), and *Burford v. Sun Oil*, 319 U.S. 315 (1943). Doc. 81 at 3. But the district court found that those cases were not applicable, and added that the Agency "ha[d] not identified any source of Illinois law on tolling." *Id*. Because the tolling of a statute of limitations is governed by state law, the district court was correct to note that the Agency failed to identify any Illinois authority on tolling, *see* Doc. 25 at 13, n. 49; Doc. 66 at 20, n. 96, and thus properly dismissed the Agency's claims based on the Initial Petition (counts II and III) and APS Petition (counts II and IV) as barred by the statute of limitations.

## III. The district court properly dismissed counts I and V because section 3027(a)(5)(A) of the Act does not create a private right of action.

In count I, the Agency alleged that the Department's dismissal of its State Plan Appeal violated its rights under section 3027 of the Act. Doc. 25 at 12-13. And in count V, the Agency alleged, among other things, that the Department's amended

regulation violated its right to a hearing under section 3027(a)(5).  *Id.* at 17, n.66.[4]

But the district court properly dismissed these claims because section 3027 does not

create a privately enforceable right.

The Agency argues that section 3027(a)(5) is privately enforceable because it

requires "an opportunity for a hearing upon request . . . *to any area agency* on aging

submitting a plan to the Department."  AT Br. 12 (emphasis in brief) (internal

quotations omitted).  Just as it did in the district court, however, *see* Doc. 66 at 8,

Doc. 81 a 5, the Agency omits language from section 3027(a)(5)(A) which specifies

that the state agency will afford a hearing upon request "in accordance with

published procedures."  42 U.S.C. § 3027(a)(5)(A).  Section 3027(a)(5)(A) does not,

therefore, provide an area agency with a right to a hearing on demand.  Instead, it

provides for a hearing "in accordance with published procedures," 42 U.S.C. §

3027(a)(5)(A), for which the Department has promulgated regulations, 89 Ill. Admin.

Code 230.450.

Statutes enacted pursuant to Congress's Spending Clause authority, such as

the Act, typically do not create rights enforceable through section 1983.  *See*

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 28 (1981) ("the typical

remedy for state noncompliance with federally imposed conditions is not a private

cause of action for noncompliance but rather action by the Federal Government to

---

[4]  The Agency also alleged in count V that the Department's amended regulation
violated its rights under Illinois law, Doc. 25 at 16, n.61, n.62, n.63, n. 73, under
section 3026 of the Act, *id.* at 17, n. 67, and under 45 C.F.R. § 1321.63, *id.* at 17, n.
71.

terminate funds to the State"); *see also Health & Hosp. Corp. of Marion Cty. v.*
*Taleveski*, 599 U.S. 166, 193-95 (2023) ("§ 1983 actions are the exception — not the
rule — for violations of Spending Clause statutes," and "[c]ourts must tread carefully
before concluding that Spending Clause statutes may be enforced through § 1983")
(Barrett, J., concurring). For a statute to be enforceable under section 1983, it must
"unambiguously confer individual rights." *Talevski*, 599 U.S. at 183 (cleaned up).

In *Talevski*, the Supreme Court clarified that "*Gonzaga* [*Univ. v. Doe*, 536 U.S.
273 (2002)] sets forth our established method for ascertaining unambiguous
conferral." 599 U.S. at 183. Under that test, a statute must clearly state that
"Congress intended to create a federal right *for* the identified class, not merely that
plaintiffs fall within the general zone of interest that the statute is intended to
protect." *Id*. (cleaned up) (emphasis in original). The *Gonzaga* test is satisfied
"where the provision in question is phrased in terms of the persons benefited and
contains rights-creating, individual-centric language with an unmistakable focus on
the benefited class." *Id*. But where the statute contains "no rights-creating
language," has an "aggregate, not individual focus," and serves "primarily to direct
the Federal Government's distribution of public funds," it is not enforceable under
section 1983. *Id*. at 183-84 (cleaned up). Satisfying the *Gonzaga* test is a "significant
hurdle," *id*. at 184, and "many federal statutes" will not clear it, *id*. at 193 (Barrett,
J., concurring). As the Court noted, since *Pennhurst*, it had "interpreted only two
Spending Clause statutes to be enforceable through § 1983." *Id*. at 194 (citing

*Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418 (1984), and

*Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498 (1990)).

*Talevski* also announced a two-step test to determine if a statute enacted under Congress's Spending Clause authority creates private rights enforceable under section 1983. The first step, as explained above, instructs courts to follow *Gonzaga* and ask whether Congress "unambiguously conferred individual rights upon a class of beneficiaries to which the plaintiff belongs." *Talevski*, 599 U.S. at 183 (cleaned up). This step focuses on "whether Congress *intended to create a federal right*." *Gonzaga*, 536 U.S. at 283 (emphasis in original). Courts "employ traditional tools of statutory construction" to determine whether individual rights are unambiguously conferred. *Talevski*, 599 U.S. at 183. "[E]xplicit rights-creating terms" are critical. *Gonzaga*, 536 U.S. at 284 (2002). If a statute satisfies "Gonzaga's stringent standard," it is "presumptively enforceable under § 1983." *Talevski*, 599 U.S. at 186. At the second step, that presumption may be overcome if "Congress intended a statute's remedial scheme to be the exclusive avenue through which a plaintiff may assert his claims." *Id*. at 187 (cleaned up). This is so where a private right of action under section 1983 is incompatible with "the enforcement scheme that Congress has enacted." *Id.*

For its part, the Agency argues that *Talevski* established a three-part test, requiring courts to (1) "[e]valuate the context of the entire statute"; (2) "[d]etermine if the statute identifies Residents as a benefited class;" and (3) "[d]etermine if any provision in the statute specifically confers Rights to Residents." AT Br. 15. This is

29

incorrect. As discussed, *Talevski* sets forth a two-step test to determine if a statute passed under Congress's Spending Clause authority creates private rights enforceable under section 1983. Although *Talevski* began by acknowledging that the statute in that case, the Federal Nursing Home Reform Act, "stem[s] from a longstanding national commitment to provide safe and dignified care for the elderly," *id*. at 180-81, 183, the Court then analyzed the language in the two specific statutes at issue in that case — 42 U.S.C. § 1396r(c)(1)(A)(ii) and 42 U.S.C. § 1396r(c)(2)(A) — to determine whether they created privately enforceable rights, *id*. at 181-82. Thus, the Agency's three-step analysis is not accurate.

Employing the appropriate analysis, the district court correctly determined that section 3027(a)(5)(A) does not create a private right of action and thus properly dismissed counts I and V. Section 3027(a) provides, in relevant part, that "each State, in order to be eligible for grants from its allotment under this subchapter for any fiscal year, shall submit to the Assistant Secretary a State plan for a two-, three-, or four-year period determined by the State agency[.]" 42 U.S.C. § 3027(a). It then details the requirements of each state plan, and section 3027(a)(5)(A) specifies that a state plan:

> shall provide that the State agency will afford an opportunity for a hearing upon request, in accordance with published procedures, to any area on aging submitting a plan under this subchapter, to any provider of (or applicant to provide) services.

42 U.S.C. § 3027(a)(5)(A). The focus of section 3027(a), then, is to regulate the state agencies charged with developing plans to submit to the federal government.

Because it governs the entity regulated, rather than the protected individuals, section 3027(a) does not evidence an intent to create a private right. *Alexander v. Sandoval*, 532 U.S. 257, 289 (2001) ("[s]tatutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons") (citing *California v. Sierra Club*, 451 U.S. 287, 294 (2001)); *see also Gonzaga*, 536 U.S. at 287 (focus of statute directing Secretary of Education to withhold funds from an educational agency that has a "prohibited policy or practice" was "two steps removed from the interests of individual students and parents" and so did not confer individual rights).

Section 3027(a)(5)(A) also has an aggregate, rather than an individual, focus, which cuts against finding a private right of action. Section 3027(a) contains several requirements for state plans, *see* 42 U.S.C. § 3027(a), with section 3027(a)(5)(A) specifying that a state plan must afford an opportunity for a hearing, "in accordance with published procedures," to an area agency "submitting a plan under this subchapter, to any provider of (or applicant to provide) services[,]" 42 U.S.C. § 3027(a)(5)(A). In *Gonzaga*, the plaintiff sought to enforce section 1232g(b)(1) of the Family Education Rights and Privacy Act, 20 U.S.C. § 1232g, which provided that federal funds shall not be granted to an education agency or institution "which has a policy or practice of permitting the release of education records . . . of students without the written consent of their parents to any individual, agency, or organization." 536 U.S. at 279 (quoting 20 U.S.C. § 1232g(b)(1)). The Court concluded that FERPA's "nondisclosure provisions . . . speak only in terms of

institutional policy and practice, not individual instances of disclosure." *Id*. at 288.

Thus, the statute had an "aggregate focus." *Id*. Similarly here, section 3027(a)

concerns the many components of a state plan, with section 3027(a)(5)(A) specifying

one aspect of that plan, and is not concerned with whether any particular individual

receives benefits or any area agency receives a hearing. *See Blessing v. Freestone*,

520 U.S. 329, 343-44 (1997) (statute did not give rise to individual rights where

federal government was required to "look to the aggregate services provided by the

State, not to whether the needs of any particular person have been satisfied"); *cf*.

*Planned Parenthood of Indiana, Inc. v. Comm'r of Indiana State Dep't Health*, 699

F.3d 962, 974 (7th Cir. 2012) (section 1396a(a)(23) of the Medicaid Act, which

provides that individual may obtain assistance from "any institution, agency,

community pharmacy, or person, qualified to perform the service or services

required," did not "simply set an aggregate plan requirement, but instead establishes

a personal right to which all Medicaid patients are entitled.").

Furthermore, as explained, section 3027(a)(5) addresses the provisions States

must include in their plans submitted to the federal government. And, unlike other

federal statutes that include "individually focused terminology," *see Gonzaga*, 536

U.S. at 287 (describing statutes that provide "No person . . . shall . . . be subjected to

discrimination"), section 3027(a)(5) is aimed at the States and establishes what must

be included in their plans.

In addition, as the district court noted, Doc. 81 at 6, section 3027(d)(3)

provides that if the federal government determines that the State has "fail[ed] to

comply substantially" with any provision in section 3027(a), it may withhold funds from the State. 42 U.S.C. § 3027(d)(3). That States may continue to receive federal funding so long as they are in substantial compliance with the Act further supports the conclusion that section 3027(a)(5)(A) does not create individual rights. *See Blessing*, 520 U.S. at 344 (statute allowing states to continue to receive funding so long as they are in substantial compliance weighed against finding an individual right because if state is in substantial compliance with statute, "any individual plaintiff" might still have their needs unmet); *see also Gonzaga*, 536 U.S. at 288 (no congressional intent to confer privately enforceable right under § 1983 where state can avoid termination of funding so long as they "comply substantially" with federal statute). The Agency challenges the district court's conclusion that the Act's allowance for substantial compliance cuts against creating a private right, calling it "puzzling" and "without merit." AT Br. 12-13. But the Agency does not contend with, nor does it cite to, *Blessing*, or *Gonzaga* which explained that federal statutes that allow States to continue to receive federal funding so long as they are in substantial compliance do not confer individual rights.

The Agency next argues that the district court's decision conflicts with *Talevski*, but it again is incorrect. To begin, the Agency argues that the district court "fail[ed] to consider the context of Section 3027," AT Br. 16, and that the Act "expressly states its purpose is giving older adults the Rights to services and the Rights to be protected from abuse*," id*. at 17. To be sure, the Act lists those stated objectives, among others. *See* 42 U.S.C. § 3001. But the Act's general purpose to

protect older adults does not speak to whether section 3027(a)(5) specifically intended to give an area agency any privately enforceable rights. By contrast, the statute in *Talevski* not only stated its intent to "provide safe and dignified care for the elderly," 599 U.S. at 180-81, but also specified that nursing home residents, like the plaintiff, had a "right to be free from . . . any physical or chemical restraints imposed for purposes of discipline or convenience and not required to treat the resident's medical symptoms," *id*. at 182. Given that clear statutory language, the Supreme Court concluded that Congress had intended to create enforceable rights for nursing home residents like the plaintiff. *Id*. Here, section 3027(a) is directed entirely at States, instructing them what to include in their state plans. *See* 42 U.S.C. § 3027(a).

The Agency also argues that it is a "benefited class" because area agencies are "referenced 171 times in [the Act]" and are given a variety of responsibilities. AT Br. 17. If the Agency means to argue that these unspecified references to area agencies in other parts of the Act give rise to enforceable rights, this argument fails because count I alleged only that Basta had violated its rights under section 3027(a). Doc. 25 at 12. And the Agency may not now, on appeal, claim that different sections of the Act provide it with a private right of action. *See Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) (complaint may not be amended by briefs on appeal). If, instead, the Agency means to argue that unspecified sections of the Act are relevant to determining whether section 3027 provides it with a private right of action, this argument lacks merit. As explained, *supra* pp. 30-32, the proper inquiry is not whether the statute intended to benefit a particular class of individuals, but whether

34

"Congress 'unambiguously conferred' 'individual rights upon a class of beneficiaries' to which the plaintiff belongs." *Talevski*, 599 U.S. at 183 (quoting *Gonzaga*, 536 U.S. at 285). And although, in conducting this analysis, courts may consider whether the statute is "phrased in terms of the persons benefited," *Talevski*, 599 U.S. at 193 (Barrett, J., concurring), the fact that area agencies are part of the Act's framework, and mentioned several times in the statute, does not mean that the section unambiguously confers individual rights on them. Finally, the Agency argues that the district court erred in dismissing count I because, it believes, it had rights created under Illinois law. *See* AT Br. 18. Those arguments, however, go to its procedural due process claim asserted in counts III and IV and are addressed below. *See infra* pp. 40-47.

## IV. The district court properly dismissed the Agency's claim in count II that Basta infringed on its ability to function as a public advocate.

In count II of its complaint, the Agency alleged that 45 C.F.R. § 1321.61 conferred on it the right to act as a public advocate. Doc. 25 at 4, n.16. Though the district court did not specify its basis for dismissing this count, *see* Doc. 81, dismissal was proper because the Agency failed to identify a statutory provision conferring an individual right to enforce 45 C.F.R. § 1321.61, and so the Agency could not establish a privately enforceable right under section 1983. To begin, a federal regulation cannot, on its own, create a privately enforceable right. *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that *Congress through statutory text created*, but it may not create a right that Congress has not.") (emphasis added). As the Supreme Court has explained, "when a

statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable." *Id.* That said, "it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress." *Id.*; *see also Johnson v. City of Detroit*, 446 F.3d 614, 629 (6th Cir. 2006) (where federal statute does not confer individual rights, federal regulations promulgated pursuant to that statute is "likewise incapable of independently conferring such rights").

On appeal, the Agency fails to identify any federal statute conferring a right to enforce 45 C.F.R. § 1321.61, so it has forfeited any argument that there is one. *U. S. v. Banas*, 712 F.3d 1006, 1010 n.1 (7th Cir 2013). Instead, the Agency argues that the district court erred because, in the Agency's role as a public advocate, it had a right to a hearing on its petitions under Illinois law. AT Br. 20-23. But to the extent the Agency alleges that Basta violated state law, the district court relinquished jurisdiction over the Agency's state-law claims after dismissing its federal claims, *see* Doc. 81 at 7-8, and on appeal, the Agency has not argued that the district court abused its discretion in doing so, *see* AT Br.; *see also RWJ Mgmt. Co. v. BP Prod. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012) (district court has "broad discretion" to relinquish supplemental jurisdiction over state law claims after dismissing federal claims).

The Agency further argues that Basta wrongly dismissed its petitions because they satisfied "the Illinois administrative pleading standard," which is a "more

relaxed" standard than "Illinois judicial pleading standard." AT Br. 20-21. But again, if the nature of the Agency's claim is that Basta failed to follow state law, the district court relinquished supplemental jurisdiction over the Agency's state-law claims, and on appeal the Agency has not advanced any arguments explaining why that was an abuse of its discretion.

To the extent the Agency argues (as it did below) that section 3026 of the Act confers on it a privately enforceable right to a hearing on its State Plan Appeal, *see* Doc. 25 at 13; Doc. 66 at 12, nn. 55-56, that argument also fails. The Agency has failed to identify what part of this section states that it is entitled to a hearing where it believes that the Department's state plan does not comply with the Act. Section 3026(a)(4) provides that the area agency will serve as the public advocate by "monitoring, evaluating, and commenting upon all . . . hearings . . . which will affect older individuals." 42 U.S.C. § 3026(a)(4). But it says nothing about requiring State agencies to provide an area agency with a hearing if it believes a state plan does not comply with the Act. *See id*.

## V. The district court properly determined that the Agency failed to allege a violation of section 3026(f)(2) because it did not claim that Basta withheld funds that would have otherwise been available to it under the Act.

To the extent the Agency intended to bring a standalone claim under section 3026(f)(2), the district court correctly held that the Agency failed to state a claim. *See* Doc. 81 at 6. Section 3026(f)(2) provides that a state agency may withhold funds available under the Act from an area agency after affording it due process. *See* 42 U.S.C. § 3026(f)(2). In its Initial Petition, the Agency alleged that the Department

37

withheld unspecified "funding" from it in retaliation for its advocacy regarding the Department's APS manual. Doc. 25-2 at 1, 4. Similarly, the Agency alleged in its complaint that "funding" was withheld. Doc. 25 at 8. But the Agency did not allege that the withheld funding would have otherwise been available to it under the Act. Doc. 25 at 8. Thus, none of the Agency's allegations implicate section 3026(f)(2), which only concerns funds available under the Act, and the district court properly dismissed its claims based on alleged violations of this statute. *See* Doc. 81 at 6.

The Agency's arguments that the district court erred are meritless. *See* AT Br. 22-23. The Agency argues that the district court "improperly appl[ied] the federal judicial pleading standard" — rather than the "Administrative Pleading Standard" — when it determined that the "allegations in the Initial Petition about the Department withholding funds" were "too speculative" to state a claim upon which relief could be granted. AT Br. 22. But is "rudimentary that pleading requirements in the federal courts are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting," *Johnson v. Hondo, Inc.*, 125 F.3d 408, 417 (7th Cir. 1997) (citing 5 Wright & Miller, Federal Practice and Procedure § 1204), and so the Agency's assertion that the district court's order is subject to reversal on this basis is without merit.

The Agency also argues that the district court inappropriately engaged in a "post hoc rationalization" of Basta's decision to deny the Initial Petition by reasoning that the allegations in that petition were "too speculative" when Basta had actually denied the petition because she determined that there was no "contested case,"

which Illinois law requires. AT Br. 23. The Agency misunderstands the district court's analysis. The court concluded that the Agency's allegation that some unspecified funds were withheld from it were too speculative to support a claim that the Department withheld funds otherwise available under the Act, as section 3026(f)(2) requires. Doc. 81 at 6. To the extent the Agency meant to argue that the Department improperly denied its petitions under state law, the circuit court acted within its discretion when it relinquished jurisdiction over the Agency's state-law claims, *see RWJ Mgmt. Co.*, 672 F.3d at 478, and the Agency asserts no arguments to the contrary, as explained.

Finally, the Agency argues that the district court "misunderstood" its claim based on section 3026(f)(2). It asserts that "the Department admitted it had withheld potentially millions of dollars in funding from [it]," so its allegations that Basta violated section 3026(f)(2) was "based on her act of refusing to provide a hearing on the Initial Petition," not because Basta herself withheld funding. AT Br. 28-29. But this does nothing to cure the deficiency the district court identified — namely, that section 3026(f)(2) specifies that a state agency may withhold from an area agency *funds available under the Act* only after providing the area agency with a hearing. The Agency did not allege that the funds that were withheld would have been available to it under the Act, so the district court properly concluded that the Agency failed to state a claim based on section 3026(f)(2).

**VI.    The district court properly dismissed the Agency's due process claims in counts III and IV.**

Because the Agency failed to identify a protected property interest found in either Illinois or federal law, the district court correctly dismissed the procedural due process claims asserted in counts III and IV. "To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010). Where a plaintiff fails to identify a protected property interest, its procedural due process claim necessarily fails. *See id.* In count III, the Agency alleged that it had property interest in a hearing on its Initial Petition under federal and state law, Doc. 25 at 13-14, and in count IV alleged that it had a property interest in a hearing on its APS Petition under state law, *id.* at 15-16. The district court correctly concluded that neither allegation could serve as a basis for the Agency's claimed property interest.

**A.    The Agency identified no property interest found in federal law.**

The Agency's procedural due process claims were properly dismissed to the extent it claimed that its property interests arose from federal law. The Illinois Supreme Court considered whether Nyhamer had a property interest in a hearing under the federal constitution and concluded that he did not. *Nyhammer*, 2022 IL 128354, ¶¶ 64-66. While the Illinois Supreme Court's determination as to federal law is not binding on this court, *520 S. Michigan Ave. Assocs., Ltd. v. Shannon*, 549 F.3d

1119, 1124 (7th Cir. 2008), the Agency is incorrect in its assertion that *Nyhammer* "did not apply federal law."  AT Br. 30.

Moreover, the Illinois Supreme Court properly concluded that the Agency had failed to identify a property interest under federal law.  First, the Agency argued that it had a property interest based on 45 C.F.R. § 1321.63.  Doc. 25 at 17, n.71; Doc. 66 at 16.  That regulation authorizes funds available under the Act to be distributed to "the State agency on aging by formula" and specifies that the state agency will award the funds to "designated area agencies on aging according to the formula determined by the State agency."  45 C.F.R. § 1321.63(a), (b).  The Agency's belief that it is entitled to funds, however, does not amount to a protected property interest.  *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) (property interest in a benefit requires individual to have "more than an abstract need or desire for it," and must have "more than a unilateral expectation of it.").

Further, to the extent that the Agency relies on section 3027(a)(5)(A) as the source of its property right under federal law, *see* Doc. 22 at 17, n.64, this section cannot form the basis of a property interest.  As explained *supra* at 27, this section specifies that the state agency will afford a hearing upon request "in accordance with published procedures."  42 U.S.C. § 3027(a)(5)(A).  The Illinois Supreme Court has already determined that state law and the Department's regulations do not entitle the Agency to a hearing on its Initial and APS Petitions.  *Nyhammer*, 2022 IL 128354, ¶¶ 64-75.  And as explained *infra* at 47, the Agency has not identified a published procedure that would entitle it to a hearing on its State Plan Appeal.

But even if section 3027(a)(5)(A) conferred on the Agency a statutory right to a hearing, that section still could not form the basis for a protected property interest. As this court has recognized, property interests "must be found in state or federal law." *Campbell v. Miller*, 787 F.2d 217, 222 (1986). And, as to state and local law, "purely procedural rules of state and local law give rise to constitutionally protected liberty interests only when the mandated procedure contains within it a *substantive* liberty or property interest." *Manley v. Law*, 889 F.3d 885, 893 (7th Cir. 2018) (emphasis in original); *see also Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989) (to demonstrate protected property interest, "party may not simply rely on the procedural guarantees of state law or local ordinance"). Given that property interests may be created by state or federal law, there is no reason to treat property interests created by state law differently than those created by federal law. And the Agency has identified no substantive component of section 3027(a)(5) which could create a protected property interest.

**B.** **The Agency identified no property interest found in state law.**

The Agency's procedural due process claims alleging that it had a property interest in hearings on its Initial and APS Petitions under state law (counts III and IV) were properly dismissed because the Illinois Supreme Court in *Nyhammer* determined that that Illinois law provided Nyhammer with no such property interest.

Doc. 77 at 8.[5]  As a result, these claims are barred by collateral estoppel, or issue preclusion.[6]

This court applies "the preclusion law of the state that rendered the judgment" to determine whether an action is barred.  *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007).  Because the Illinois Supreme Court rendered the decision in *Nyhammer*, this court applies Illinois preclusion law.  In Illinois, the doctrine of collateral estoppel, "also known as issue preclusion," *Patrick v. City of Chi.*, 81 F.4th 730, 735 (7th Cir. 2023), "applies when a party, or someone in privity with a party, participates in two separate and consecutive cases arising on different causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction."  *Nowak v. St. Rita High Sch.*, 197 Ill.2d 381, 389-90 (2001).  In other words, issue preclusion "prevent[s] parties from relitigating issues that have already been decided."  *Creation Supply, Inc. v. Selective Ins. Co. of Southeast*, 51 F.4th 759, 765 (7th Cir. 2022).  To find issue preclusion, the following conditions must be met:  "(1) the issue decided in the prior adjudication is identical with the one

_____

[5]  When Basta moved to dismiss the complaint, Basta argued that the district court should abstain from exercising jurisdiction over counts III and IV because at that time the state court litigation was pending before the Illinois Supreme Court.  Doc. 46-1 at 16.  By the time Basta filed her reply in support of her motion to dismiss, the Illinois Supreme Court had ruled in favor of Basta and against Nyhammer, so Basta argued that dismissal, rather than abstention, was proper.  Doc. 77 at 8-9.

[6]  Basta, in her filings, did not use the phrase "collateral estoppel," *see* Doc. 77 at 8-9, but she discussed the similarities between the Agency's federal court action and state court litigation, *see id.*, so she has not forfeited this argument.

presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Nowak,* 197 Ill.2d at 390. All three requirements are satisfied here.

First, the Illinois Supreme Court's decision in *Nyhammer* affirmed the circuit court's dismissal of the complaint with prejudice, *Nyhammer*, 2022 IL 128354, ¶¶ 15, 75, and the United States Supreme Court denied Nyhammer's petition for writ of *certiorari*, https://bit.ly/4cpwdtQ. Thus, the Illinois Supreme Court's decision was a final judgment on the merits because it "terminat[ed] the litigation" and "fix[ed] absolutely the parties rights, leaving only enforcement of the judgment." *A&R Janitorial v. Pepper Constr. Co.*, 2018 IL 123220, ¶ 17 (internal quotations omitted).

Second, Nyhammer, the plaintiff in the state court litigation, was in privity with the Agency. Nyhammer is the executive director and general counsel of the Agency. *Nyhammer*, 2022 IL 128354, ¶ 3. Because Nyhammer "adequately represent[ed] the same legal interest" at issue in the state court litigation, *Direct Auto Ins. Co. v. Bahena*, 2019 IL App (1st) 172918, ¶ 62, the second requirement for collateral estoppel is satisfied.

Finally, the issues decided in *Nyhammer* are identical to those presented by the procedural due process claims in this action. *Nyhammer* concerned whether the Agency's Initial and APS Petitions constituted "contested cases," entitling it to hearings on those petitions. *Nyhammer*, 2022 IL 128354, ¶ 42. To answer that question, the Illinois Supreme Court analyzed "the relevant statutory, regulatory,

and constitutional provisions." *Id*. at ¶ 43.  The court analyzed the Illinois Act on the Aging, 20 ILCS 105/1, *et seq*. (2018), and the Adult Protective Services Act, 320 ILCS 20/1 *et seq*. (2018), and determined that neither statute required the Department to provide the Agency with a hearing on its Initial or APS Petition.  *Id*. at ¶¶ 47-53.  It further analyzed the Department regulations in place at the time the petitions were filed and determined that they, too, did not require a hearing.  *Id*. at ¶¶ 55-56.  And the court analyzed whether there was a right to a hearing in the federal or Illinois constitutions.  *Id*. at ¶ 64.  The court noted that, under both constitutions, "procedural due process protections are triggered only when a constitutionally protected liberty or property interest is at stake."  *Id*. at ¶ 64.  It continued that "to have a property interest, there must be more than a unilateral expectation of the funding or approval of its service provider designations."  *Id*. at ¶ 63 (citing *Groenings v. City of St. Charles*, 215 Ill. App. 3d 295, 307 (2d Dist. 1991), which cited *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972)).  The court then concluded that the Agency had no protected property interest entitling it to "the 'other funding' or service provider designation approval that it seeks."  *Id*. at ¶ 66.

In the district court, the Agency alleged that Illinois law provided it with a property interest in hearings on its Initial and APS Petitions.  Doc. 25 at 13-15; Doc. 66 at 10 (explaining that the Agency alleged in its complaint that its "protectable property interests" were "created by Illinois law").  Thus, the issue the district court was asked to decide — whether Illinois law created any protected property rights entitling the Agency to a hearing — was the same as the issue decided in *Nyhammer*.

As a result, the district court properly relied on the Illinois Supreme Court's conclusion that Nyhammer had no protected property interest under Illinois law in a hearing on the Agency's Initial and APS Petitions. Doc. 81 at 7. And so it correctly dismissed the Agency's procedural due process claims, to the extent they alleged that Illinois law was the source of its claimed property interest.

In addition, the district court noted, as to the State Plan Appeal, the Agency had "not cited any state law which creates a protectable property interest in an [area agency] in the contents of a state plan required by section 3027 for a state to receive OAA funding." Doc. 81 at 7. The Agency takes issue with this holding, asserting that the district court's statement is "factually incorrect" because the petition in the State Plan Appeal "cited the Department's own regulations in 89 Ill. Admin. Code § 230.150(a) and 89 Ill. Admin. Code § 230.450(b) as the basis for bringing the State Plan Appeal." AT Br. 18. But the Agency asserted no procedural due process claim based on the denial of its State Plan Appeal. See Doc. 25 at 12-18. Instead, its only such claims concerned the Initial and APS Petitions. *Id*. at 13-16. The Agency's only claim regarding its State Plan Appeal was found in counts I and II, in which it claimed that dismissal of that appeal violated the Act. *Id*. at 12-13. To the extent the Agency believes that denial of its State Plan Appeal violated its procedural due process rights, it may not raise that claim for the first time on appeal. *Cty. of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 819-20 (7th Cir. 2006) (court "may consider factual allegations raised for the first time on appeal," but "ordinarily will not address new issues raised for the first time on appeal").

46

In any event, the Agency is incorrect that these regulations provide it with a property interest in a hearing on its State Plan Appeal. 89 Ill. Admin. Code § 230.150(a) enumerates several responsibilities of area agencies when acting as advocates for older persons, including to "[m]onitor, evaluate, and comment on all policies, programs . . . and community actions which affect older persons." 89 Ill. Admin. Code § 230.150(a)(1). But the regulation contains no provision entitling an area agency to a hearing in connection with it performing its function as an advocate. *See* 89 Ill. Admin. Code § 230.150(a). And 89 Ill. Admin. Code § 230.450(b) states that "the Department reserves the right to conduct administrative hearings for other appeal requests concerning the health, safety and welfare of older individuals." 89 Ill. Admin. Code § 230.450(b). While the regulation grants the Department discretion to hold hearings in certain circumstances, it does not impose an obligation on it to hold a hearing where an area agency seeks to challenge the contents of a state plan, as the Agency did in its State Plan Appeal. Doc. 25 at 7; Doc. 25-6 at 1.

## VII. In the alternative, Basta is entitled to qualified immunity on the Agency's request for damages on its claims in counts I through V.

Alternatively, the Agency's requests for damages against Basta in counts I through V fail because she is entitled to qualified immunity. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (cleaned up). For a right to be clearly established, "at the time of the challenged conduct, the right's contours must be sufficiently clear that every

reasonable official would have understood that what he is doing violates the right and existing precedent must have placed the statutory or constitutional question beyond debate." *Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014) (cleaned up). The plaintiff "carries the burden of defeating the qualified immunity defense," *Chasensky*, 740 F.3d at 1094, and may do so in "two ways: (1) he can point to a clearly analogous case establishing the right to be free from the conduct at issue; or (2) he can show that the conduct was so egregious that no reasonable person could have believed that it would not violate established rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 508 (7th Cir. 2015) (cleaned up).

Here, the Agency did not meet its burden to show that Basta is not entitled to qualified immunity. The Agency pointed to no clearly analogous case establishing that it is entitled to a hearing on any of its petitions. Indeed, case law establishes the opposite, as the Illinois Supreme Court has already determined that the Agency is not entitled to hearings on its Initial and APS Petitions. *Nyhammer,* 2022 IL 128354 at ¶¶ 64-75. In addition, the Agency has failed to show that Basta's actions were so egregious that it would be unreasonable for her to believe that she had not violated the Agency's rights. As explained *supra* at 30-34, 40-46, the Agency has not established that it has a privately enforceable right under section 3027(a) of the Act, nor has it identified a protected property interest under federal or state law. As a result, Basta is entitled to qualified immunity.

**VIII. The district court's order is not subject to reversal merely because it did not address each count individually.**

The Agency also argues that the district court's order should be reversed because it did not "explain[ ] why" it dismissed "each [c]ount of the [c]omplaint." AT Br. 7. But the Agency cites no authority in support of this argument, resulting in waiver. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("underdeveloped arguments without discussion or citation to pertinent legal authority are waived").

Waiver aside, the Agency is incorrect that the district court failed to explain how its analysis applied to each count. *See* AT Br. 7-8. The court explained that section 3027 of the Act did not create a privately enforceable right, *see* Doc. 81 at 5-6, requiring dismissal of the Agency's claims based on that section (counts I and V). The court noted the Agency's reliance on 45 C.F.R. § 1321.61 in support of its claim in count II, *see id*. at 3, n.1, but ultimately granted Basta's motion to dismiss all of the Agency's federal claims, including count II, *id*. at 7. Further, the court explained that the Agency had not identified a protected property interest, *see id*., requiring dismissal of its procedural due process claims (counts III and IV). Finally, the court stated that any of the Agency's claims based on its Initial and APS Petitions were barred by the statute of limitations, *id*. at 3-4, requiring dismissal of counts II, III, and IV insofar as they relied on those petitions. That analysis covered all of the Agency's federal claims. As a result, the analysis in the district court's order presents no prejudice to the Agency. *See* AT Br. 8 (arguing that the Agency is "unfairly hindered" on appeal because district court order is "ambiguous.").

49

# CONCLUSION

For these reasons, Defendant-Appellee Paula Basta, in her official and individual capacity, requests that this court affirm the district court's judgment.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

/s/ Kaitlyn N. Chenevert
**KAITLYN N. CHENEVERT**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2127
Kaitlyn.Chenevert@ilag.gov

Attorneys for
Defendant-Appellee

April 10, 2024.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of

Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style

requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has

been prepared in proportionally spaced typeface using Microsoft Word 365, in 12-

point Century Schoolbook BT font, and complies with 7th Cir. R. 32(c) in that the

brief is 13,515 words.

<div style="margin-left:50%;">

/s/ Kaitlyn N. Chenevert
KAITLYN N. CHENEVERT
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2127 (office)
(773) 590-6946 (cell)
kaitlyn.chenevert@ilag.gov

</div>

**CERTIFICATE OF FILING AND SERVICE**

I certify that on April 10, 2023, I electronically filed the foregoing Brief of Defendant-Appellee with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that the other participants in this appeal, named below, are CM/ECF users, and thus will be served via the CM/ECF system.

Joel Huotari
jhoutari@wilmac.com

Patricia Hall
phall@wilmac.com

/s/ Kaitlyn N. Chenevert
KAITLYN N. CHENEVERT
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2127 (office)
(773) 590-6946 (cell)
Kaitlyn.Chenevert@ilag.gov